IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:94-cr-32 (JCC) |
| | ) | |
| DARRYL HUNTER, | ) | |
| | ) | |
| Defendant. | ) | |

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Darryl Hunter's position on supervised release violations. [Dkt. 49.] Defendant argues that the period between when the arrest warrant was issued in March 2005 and when it was executed in May 2017 was not "reasonably necessary" and, therefore, the Court lacks jurisdiction under 18 U.S.C. § 3583(i) to impose punishment for his supervised release violations. [*Id.*] For the reasons set forth below, the Court disagrees. It retains jurisdiction and will impose punishment for Defendant's admitted violations.

### **I. Background[1]**

On January 26, 1994, Defendant pled guilty to conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [Dkt. 19.] The Court initially sentenced Defendant to 262 months' imprisonment,

---

[1] Unless otherwise noted, the following facts are taken from the Government's response and provide additional context for law enforcement's efforts to locate Defendant after the arrest warrant was issued. *See* Opp. [Dkt. 53] at 2-5.

1

followed by a five-year term of supervised release. [Dkt. 22.] Pursuant to a Rule 35 motion, the Court later reduced Defendant's sentence to 120 months, followed by the same five-year term of supervised release. [Dkt. 38.]

Defendant was released from BOP custody in June 2004. On March 25, 2005, the U.S. Probation Office filed a Petition on Supervised Release with this Court, alleging that Defendant violated the terms of his supervised release by committing a new crime, failing to report in person to the probation office upon being released from custody, and using a controlled substance.[2] [Dkt. 39.] On March 28, 2005, this Court issued a warrant for his arrest.

On April 20, 2005, Defendant's probation officer contacted his mother via telephone and left a message for Defendant to call the office. Defendant returned the call that same day. His probation officer personally informed him that an arrest warrant had been issued and instructed Defendant to turn himself in the next day. Defendant failed to do so. On April 22, 2005, the probation officer again contacted Defendant's mother in an attempt to reach Defendant, but was unsuccessful. On May 20, 2005, the probation officer sent a letter to Defendant's last known address on file, instructing Defendant to report on June 2, 2005. Again, Defendant did not show up. On July 8, 2005, the probation officer contacted

---

[2] At oral argument on May 18, 2017, Defendant admitted to the last two violations: failing to report and using a controlled substance.

Defendant's mother for a third time. His mother informed the probation officer that she had not been in recent contact with Defendant and did not know his whereabouts.

Over the next twelve years, the United States Marshals attempted to locate Defendant in order to execute the arrest warrant. In March 2007, an investigator interviewed Defendant's mother at her home. She stated that she had not seen or heard from her son. That same month, an investigator also interviewed the manager at Defendant's last known place of employment. The investigator discovered that Defendant had not worked there since December 2005. In May 2007, a Deputy U.S. Marshal investigated Defendant's last known address by interviewing the residents currently living there. They had no knowledge of Defendant. A database search conducted in May 2007 also revealed a second possible address. However, the address turned out to be a demolished building. From 2010 until 2012, law enforcement learned no further information about Defendant's whereabouts from its databases.

Approximately four years later, in November 2016, a database check finally revealed a new potential address for Defendant. Investigators interviewed the leasing office personnel at that address and learned that a family unrelated to Defendant had been living there since March 2016. That same month, investigators learned that the social security number on file for Defendant was

currently being used by another individual in Maryland.  Through
confidential witness interviews, the investigators also obtained a
new telephone number for Defendant.  That number was ultimately
registered to an individual named "Leroy White," however.  The
Government alleges that Defendant fraudulently used this name.
Finally, on May 4, 2017, due to the assistance of confidential
informants, the Marshals executed the warrant successfully.
Defendant was arrested at an apartment complex in Maryland; however,
he was not, and never had been, listed on the unit's lease.

      Defendant made his initial appearance before Magistrate
Judge Michael Nachmanoff on May 10, 2017.  [Dkt. 41.]  He then
appeared before this Court for a Supervised Release Revocation
Hearing on May 18, 2017.  [Dkt. 52.]  That hearing was continued to
May 25, 2017, to allow for further briefing on Defendant's
jurisdictional challenge, as well as to provide the Court with
additional information on the efforts of the U.S. Marshals to locate
Defendant over the past twelve years.  Having been fully briefed and
argued, this matter is now ripe for disposition.

## II. Analysis

      Section 3583 explains the Court's power to revoke a term
of supervised release after that term has expired.  It states, in
relevant part, as follows:

> The power of the court to revoke a term of supervised
> release for violation of a condition of supervised
> release, and to order the defendant to serve a term of

> imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period *reasonably necessary* for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i) (emphasis added). In other words, as long as a warrant issues during a defendant's term of supervised release for alleged violations of that supervision, and any delay in bringing the defendant into custody is "reasonably necessary," the Court retains its jurisdiction to impose punishment. *See United States v. Sherry*, --- F. Supp. 3d. ---, 2017 WL 1823118, at *3 (E.D. Va. May 5, 2017) (discussing the Court's retained jurisdiction under a similar statute—18 U.S.C. § 3565(c)—regarding probation violations).

In the instant case, no one disputes that the arrest warrant issued well before the expiration of Defendant's term of supervised release.[3] Although Defendant claims that he was "easily locatable" and living with his mother from 2004 until 2012, this seems far from credible, especially in light of the evidence that his mother told U.S. Marshals more than once that she had no knowledge of his whereabouts. Furthermore, Defendant had been personally informed by his probation officer that there was an active warrant out for his arrest, but instead of self-surrendering, he chose to abscond from supervision. Defendant's many false

---

[3] The arrest warrant issued in March 2005 and Defendant's supervised release was set to expire in June 2009.

addresses, as well as a telephone number registered in an allegedly fake name, show an intentional pattern of evasion in the years that followed. Having decided to become a fugitive, Defendant cannot now claim that the U.S. Marshals' failure to find him sooner somehow excuses his wrongful acts.

Accordingly, the Court finds that the twelve years that elapsed between the issuance of the arrest warrant and its execution were "reasonably necessary" under Section 3583(i). *See United States v. Hernandez-Ferrer*, 599 F.3d 63, 69 (1st Cir. 2010) (describing the period of time allowed for in 18 U.S.C. § 3583(i) as including "the time that the offender, by his own contrivance, cannot be haled into court . . . [A]s long as a warrant or summons issues before the expiration of the term, an offender who remains a fugitive will still be subject to the court's jurisdiction once located."). The Court therefore retains jurisdiction over Defendant to impose punishment for his two admitted supervised release violations.

Even if the Court were to assume that a twelve-year delay was not "reasonably necessary," the Court would nevertheless retain jurisdiction under the fugitive tolling doctrine. The Fourth Circuit first recognized this doctrine in the supervised release context in 2011. *See United States v. Buchanan*, 638 F.3d 448, 455 (4th Circuit 2011). It is premised upon the idea that supervised release is part of the original criminal sentence. *Id.* As is the

case for escaped prisoners and parole violators, the fugitive tolling doctrine refuses to reward supervised release absconders with credit for time they did not actually serve. *Id.* "Thus, when a defendant absconds from supervised release, his supervised release 'clock' stops, and it resumes when federal authorities are capable of resuming supervision." *Id.* at 457. Here, Defendant absconded from supervision in 2005 and, due to his own deliberate choice to evade law enforcement, he was not located and apprehended until 2017. Under the doctrine, then, his five-year term of supervised release was tolled while he was on the run. Accordingly, even if the twelve-year delay between the issuance of his arrest warrant and its execution had not been "reasonably necessary," this Court would still retain jurisdiction under the fugitive tolling doctrine to impose punishment for violations he committed in 2004 and 2005.

### III. Conclusion

For the foregoing reasons, the Court will retain jurisdiction over Defendant's supervised release violations and impose punishment.

An appropriate Order shall issue.

|  | /s/ |
|---|---|
| May 25, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |